UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JACQUELYN BURNETT, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-00310 |
| | § | |
| COLLEGE OF THE MAINLAND, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Seven former nursing students at College of the Mainland (COM) allege that the college violated their substantive and procedural due process rights by failing them in a class that was a requirement for graduation.  The gist of their complaint is that the college changed its policy concerning whether the students could retake an exam.  COM argues that the students' procedural claims should be dismissed because the students received an ample appeal process.  And it argues that the substantive due process claims fail because COM's decision to give the students a failing grade in the class without an opportunity to retake the exam was a reasonable exercise of professional judgment.

This case was referred to the magistrate court, which concluded that COM's motion to dismiss should be granted in part and denied in part.  This Court now conducts the required *de novo* review of COM's motion.

# I.   BACKGROUND[1]

COM is a public community college located in Texas City. Plaintiffs are seven former students in COM's nursing program: Jacquelyn Burnett, Kesha Davis, Liza Davis, Bridgette Fuselier, Stella Mbagwu, Gina Stafford, and Jerusa Wekulo.  Docket Entry No. 8 ¶ 4.  The students enrolled in COM's nursing program at various points in 2010 and 2011. *Id.* ¶ 8.  Upon their enrollment, they received a student handbook, which contained a requirement that students pass an exit examination—the HESI NCLEX-RN readiness exam—as a prerequisite to graduation.  The handbook also provided that students could retake this exam if they did not pass it on the first attempt.

In 2010, the Texas Board of Nursing issued a position statement "recommending that a high stakes test not be the only criteria for graduation." *Id.* ¶ 38.  Based on this recommendation, COM changed the way students would be required to take the HESI exam.  Instead of administering the exam as a stand-alone test, COM decided to include the HESI exam in the nursing program's Advanced Medical Surgical course, where it would account for 40% of the students' final grades.  *Id.* ¶ 40.  This change was instituted in the fall of 2011.  The students claim that COM never put this modification to the policy in writing and did not otherwise inform the students of this change.  *Id.* ¶ 42.

---

[1] The background section is based on allegations in Plaintiffs' First Amended Complaint, *see* Docket Entry No. 8, which the Court must assume to be true at this stage.

In June 2012, the students took the HESI exam as part of the Advanced Medical Surgical course and later learned that they failed the course and could not graduate. The students then contacted an administrator in the nursing program and asked to retake the exam. They also met with Gay Reeves, the Director of the Nursing School. Neither encounter led to what the students were ultimately looking for—an opportunity to retake the HESI exam and be eligible for graduation. The students then voiced their concerns at a meeting of COM's Board of Trustees, which also did not change COM's decision. *Id.* ¶ 34. Finally, they launched a formal grade appeal. In August 2012, the appeal panel rejected their request to retake the examination, asserting that COM informed the students of the change and, furthermore, that COM has the right to change nursing program policies when necessary. The end result is that the students have not graduated from COM's nursing program.

The students brought section 1983 claims against COM and Reeves, asserting violations of their substantive and procedural due process rights. The magistrate judge submitted his Memorandum and Recommendation on COM's motion to dismiss the students' claims, and COM filed timely objections. The magistrate judge recommended that the Court dismiss the claim against Reeves in her official capacity because it was duplicative of the claim against COM. However, the magistrate judge concluded that the procedural and substantive due

process claims against COM and Reeves in her individual capacity should survive the motion to dismiss.

## II.   RULE 12 STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  The court does not look beyond the face of the pleadings to determine whether the plaintiff has stated a claim.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  To survive a motion to dismiss, a claim for relief must be "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.   DISCUSSION

### A. Procedural Due Process

As a threshold matter in the procedural due process analysis, it is not clear that students have any liberty or property interests in academic programs that would merit procedural protections under the Fourteenth Amendment.  Following the lead of the Supreme Court in *Board of Curators of Univ. of Missouri v. Horowitz*, courts have assumed, without deciding, that students have some

protected interest in public higher education.   435 U.S. 78 (1978); *see also* *Shaboon v. Duncan*, 252 F.3d 722, 730 (5th Cir. 2001) (assuming without deciding that medical resident had protected interest); *Davis v. Mann*, 882 F.2d 967, 973 (5th Cir. 1989) (quoting *Horowitz* for the proposition that even "assuming the existence of a liberty or property interest," dental resident received adequate process under the Fourteenth Amendment).

Any procedural requirements that attach to academic decisions are "far less stringent" than those that exist when a student challenges a disciplinary decision made by a public institution, when the student is entitled to an "'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student the opportunity to characterize his conduct and put it in proper context." *Horowitz*, 435 U.S. at 86 (quoting *Goss v. Lopez*, 419 U.S. 565, 584 (1975)).  Lighter oversight of academic evaluations of students is warranted because "[e]ducational institutions 'should not be weighted down with formalized procedural requirements imposed by actors estranged from the academic environment.'"   *Ekmark v. Matthews*, 524 F. App'x. 62, 64 (5th Cir. 2013) (quoting *Davis*, 882 F.2d at 974).  Therefore, adverse academic actions "require only the minimum procedure of notice and not a hearing."  *Id.* (citing *Horowitz*, 435 U.S. at 90).

Neither side contests that the actions taken by COM in relation to the

students were academic, rather than disciplinary, in nature.   And when they challenged those actions, the students "exercised their rights to both an informal and formal appeal of the denial" to retake the HESI exam.   Docket Entry No. 8 ¶ 28.   Their attendance at the Board of Trustees' meeting alone would have been more than sufficient to satisfy their procedural rights because they had the opportunity to "voice their complaint to the Board"—i.e., representatives of the administrative body that made the adverse academic decision.   *Id.* ¶ 34.   And the students received far more process than that one Board meeting.   Indeed, they received a full formal grade appeal, after which a panel issued a position statement explaining the reasoning behind COM's decision.   This panel review went well beyond what courts have found sufficient to satisfy procedural due process concerns in similar circumstances.   *See, e.g.*, *Elmark*, 524 F. App'x. at 64 (holding that medical resident who was notified of reason for his suspension was given adequate process); *Shaboon*, 252 F.3d at 731 (holding that medical resident who was informed her position was in jeopardy due to deficient performance and given several opportunities to explain why she should not be dismissed received adequate process); *Davis*, 882 F.2d at 975 (holding that dental resident who received an informal hearing "received even more procedural protections than are required by the Fourteenth Amendment").   Based on the extensive process the students were afforded—in the context of a procedural due process regime that only imposes a

notice requirement on COM—the students have not alleged a violation of their procedural due process rights sufficient to withstand a Rule 12 motion to dismiss.

## B. Substantive Due Process

The students also allege that the decision to no longer allow them to retake the HESI exam was a violation of their substantive due process rights. The existence of a substantive due process right to be free from arbitrary grading is even more dubious than the unsettled proposition that public higher education is a property right that gives rise to a procedural due process claim. *See Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." (citation omitted)). The Supreme Court has never recognized such a right; instead, it twice merely assumed that such a right existed as a matter of constitutional avoidance because the claim asserted would not be a successful one. *See id.* at 222 (agreeing to "assume[], without deciding, that federal courts can review an academic decision of a public educational institution under a substantive due process standard"); *Horowitz*, 435 U.S. at 91–92 ("Even assuming that the courts can review under such a standard an academic decision of a public educational institution, we agree with the District Court that no showing of arbitrariness or capriciousness has been made in this

case.").  This Court has little doubt that the Supreme Court, if confronted with the issue today, would reject the existence of such a right given the current standard that any substantive due process right must be "deeply rooted in this Nation's history and tradition."  *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). This Court is aware of nothing in this Nation's past (or its present for that matter) recognizing a fundamental liberty interest to be free from arbitrary grading decisions, even though every American has probably felt, at one time or another during their student days, like a victim of such practices.[2]

    This Court will follow the lead of the Supreme Court and other courts, however, which have avoided deciding the question whether such a right exists when the allegations are insufficient to show that the challenged conduct "is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225.   The allegations demonstrate that COM exercised judgment in ending its retake policy.  The change did not happen in a vacuum, but came about only after a recommendation from the Texas Board of Nurses that nursing programs should deemphasize high stakes tests.  The trade-off was that

---

[2] What would follow the recognition of a substantive constitutional right to be free from arbitrary grading decisions?  High school football teams asserting constitutional claims to be free from arbitrary officiating?  *Cf.* Tim Daniels, *Pennsylvania Man Sues NFL After Chargers Make Playoffs on Missed Call,* bleacherreport.com, Jan. 9, 2014 (discussing suit against NFL alleging poor officiating, albeit a lawsuit apparently sounding in tort).

students could no longer retake the exam, as it would now be a component of a course instead of a stand-alone requirement.

The exercise of judgment is all COM needs to show, but that judgment appears to be sound.  Once the exam was merely one assignment in a particular class, not allowing a "do over" promoted finality, efficiency, and fairness— interests that are good enough to justify many of the rules that govern our legal system.  Plaintiffs would no doubt lay claim to the fairness mantle in the sense that allowing "do overs" allows more people to "succeed."   But there is another conception of fairness—that every student should be graded under the same conditions.  And even judged by the Plaintiffs' standard in which fairness means relaxing requirements (which, of course, means that the value of the degree may be watered down), the change concerning the HESI exam actually sought to reduce the stress associated with "all or nothing" finals by removing it as an independent graduation requirement.  *See* Docket Entry No. 8 ¶ 38.

Although the case law on whether academic decisions actually constitute a substantive due process violation is scant (the Court has found no Fifth Circuit case ever finding such a claim valid), the Court's conclusion that COM's decision was not "beyond the pale of reasoned academic decision-making" is in line with the cases that do exist.    *See Ewing*, 474 U.S. at 227–28 (affirming university's decision to disallow one student to retake an exam even though the university had

given other students the opportunity to retake that same exam); *Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir. 1999) (finding that decision to deny student with poor grades a doctorate "[did] not come close to showing that [University] did not exercise professional judgment."); *Chan v. Board of Regents of Tex. S. Univ.*, 2012 WL 5832494, at *5–6 (S.D. Tex. Nov. 16, 2012) (granting summary judgment for law school on claim that its curved grading system violated students' constitutional rights). Perhaps the most analogous case comes from the Supreme Court of Mississippi, which concluded that modifying an exam requirement after a student's enrollment was a reasonable academic decision. *See Univ. of Miss. Med. Ctr. v. Hughes*, 765 So.2d 528 (Miss. 2000). In *Hughes*, a medical school explained that it enacted a new exam requirement so that students "who received an M.D. degree from the University would be qualified for entry into residency training in Mississippi." *Id.* at 541. Additionally, a majority of medical schools nationwide had changed their curriculums to add the same requirement. Based on that evidence, the court found that the policy change, though made after the plaintiffs had already enrolled, "was rationally related to the University's legitimate function of educating physicians." *Id.* at 542.

The same is true in this case. COM's changed retake policy in response to a new directive from the Texas Board of Nursing is rationally related to its mission of educating nurses, most of whom will practice in Texas.

## IV.   CONCLUSION

For the reasons explained above, the Court agrees with COM's objections to the Report and Recommendation and finds that Plaintiffs have not alleged violations of their procedural or substantive due process rights sufficient to withstand a motion to dismiss.   Because no constitutional violation has been adequately pled, the Court need not address Reeves' qualified immunity defense or the other elements of Plaintiffs' section 1983 claim.   Accordingly, Defendants' First Amended Motion to Dismiss (Docket Entry No. 11) is **GRANTED**. Plaintiffs have already amended their complaint once, and given the Court's reasoning, any additional amendment would be futile.   The case is therefore **DISMISSED WITH PREJUDICE**.

SIGNED this 13th day of January, 2014.

_____
Gregg Costa
United States District Judge